IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES MICHAEL SPENCE,        )
      ID # 1224407,          )
         Petitioner,      )
vs.                           )        No. 3:06-CV-2392-K (BH)
                            )             ECF
NATHANIEL QUARTERMAN, Director,  )    Referred to U.S. Magistrate Judge
Texas Department of Criminal        )
Justice, Correctional Institutions Division,  )
        Respondent.     )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementa-

tion thereof, subject cause has previously been referred to the United States Magistrate Judge. The

findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice -

Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 to challenge a December 15, 2003, conviction for aggravated sexual

assault of a child in Cause No. F03-71300-KW. Respondent is Nathaniel Quarterman, Director of

TDCJ-CID.

### B.  Procedural and Factual History

In March of 2003, the State indicted petitioner for aggravated sexual assault of a child, his

niece. The indictment also alleged that petitioner had been convicted of two prior felony offenses.

(Trial Transcript at 2). On December 10-12, 2003, petitioner was tried before a jury and found

guilty.  The jury sentenced him on December 15, 2003, to seventy-five years.  (Tr.:5-6, 50, 61, 64).

The state appellate court recounted the evidence presented at trial as follows:

> The niece testified at trial that the assault occurred while she and Spence were at her great aunt's house.  The niece testified that she occasionally stayed at her great aunt's house and on the night of the assault, she had fallen asleep on the couch but awoke when Spence began shaking her leg.  Spence told her he wanted "to have sex" with her and took his shorts and underwear off.  Although she refused, he lay on top of her.  Through markings on a picture of a boy and a girl, the niece showed that Spence penetrated her with his penis.  She further testified that it hurt, and he later apologized to her.  At the time of the assault, she was about thirteen years old.

> The niece testified she did not disclose the assault until a few weeks later, when she wrote a letter to another uncle, David, and his girlfriend, Tammy Owen, detailing what had happened.  However, she asked that they not report the assault because she did not want Spence to go to jail.  The niece testified she did not know how the police became involved.  At some point, she met with Sergeant Kimberly Bustos and later Dallas Children's Advocacy Center worker Tracy Harmon and Detective Kimberly Mayfield.  She again wrote down what had happened, but then recanted.  The niece explained that she recanted because her grandmother, Spence's mother, had asked her to recant and she "felt bad" for her.  The niece also testified that she loved Spence and "did not want to get him in trouble." However, she maintained at trial that Spence had assaulted her.  The record reflects the niece, age fourteen at trial, had a difficult time testifying, was crying, did not make eye contact, and used the letter and statement she wrote detailing the assault to refresh her memory.

> The niece's mother testified that she was with the niece and the grandmother when the niece recanted.  The mother confirmed that the grandmother had asked the niece to recant and also testified that the niece never told her that the assault had not happened.  The mother admitted to an extensive criminal record and testified that she and the niece had lived in various places over the years.

> Harmon and Mayfield testified that the niece had a hard time telling them what happened and was "very upset."  Their meeting with her was taped and the video portion, but not the audio portion, was admitted into evidence.  This tape showed the niece crying at

2

times and eventually writing a statement. Mayfield testified that she reviewed the statement with the niece and determined that the niece had been assaulted. On cross-examination, Mayfield testified that she did not conduct an independent investigation before reaching her conclusion, but explained that she had no reason to doubt the niece because she had been consistent in telling what had happened. However, no scientific or physical evidence indicating an assault had occurred existed.

Testifying in Spence's defense, the great aunt explained her house was very small and she "knew of no time" that the assault could have occurred. She also testified that she did not report the assault once she learned of it and that she did not want to see Spence go to jail but "would not lie."

Spence's brother Thomas, who lived with the great aunt, testified also that he "knew of no time" when the assault could have occurred and that the niece's attitude towards Spence remained the same after the assault allegedly occurred.

In rebuttal, Owen testified concerning the niece's disclosure. According to Owen, the niece had a difficult time talking about it and chose to write down what had happened. Owen testified that she did not report the assault and explained that she and David thought it should be handled within the family.

Nancy McNeil, a pediatric nurse practitioner specialized in examining physically and sexually abused children at Children's Medical Center, also testified in rebuttal. She did not examine the niece nor review any records of the niece, but testified that a child can have a normal pelvic exam after penetration has occurred. She also explained that DNA evidence is not obtained if more than forty-eight hours have elapsed since the assault.

*Spence v. State*, No. 5-04-00030-CR, slip op. at 1-3 (Tex. App.–Dallas, January 5, 2005, pet. ref'd) (footnote omitted). At the punishment phase of the trial, the State presented evidence that petitioner had previously been convicted of four misdemeanor assaults, one misdemeanor DWI, three misdemeanor evading arrest charges, and seven felonies, including four robberies, two burglaries of a habitation, and one attempted burglary of a habitation. (R. 8:39-43; State's Ex. ##8-

21). The State also presented testimony from a twenty-six-year-old first cousin of petitioner who testified that petitioner raped her when she was twelve or thirteen years old, and that he had fondled her when she was three or four years old. (R. 8:47-58, 67-71). At punishment, petitioner presented testimony from his mother, his sister, his sister-in-law, his mother-in-law, his thirteen-year-old niece, his eleven-year-old stepson, and his ten-year-old stepdaughter. They testified that petitioner was a hard worker, had turned his life around after getting in trouble with the law in the past, and was kind and caring to all of the family members, including all of the children. (R. 8:89-117).

In his direct appeal, petitioner challenged the legal and factual sufficiency of the evidence, as well as an argument made by a prosecutor during closing statements. The Fifth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Id*. On July 10, 2006, petitioner filed a state application for writ of habeas corpus in which he raised, along with numerous other claims, the same issues he raises in his federal petition. (State Habeas Transcript at 19-23). On November 29, 2006, the Court of Criminal Appeals denied petitioner's state application without written order on the findings of the trial court without an evidentiary hearing. (S.H.Tr.:cover).

On December 27, 2006, petitioner filed the instant petition for federal habeas relief. Respondent filed an answer on March 13, 2007, (*see* Answer) and provided the state-court records. Petitioner filed a reply on April 2, 2007. (*See* Reply).

A. <u>Substantive Issues</u>

Petitioner asserts that: (1) his trial counsel provided ineffective assistance of counsel; (2) his appellate counsel provided ineffective assistance of counsel; (3) the prosecutor committed misconduct; (4) he is actually innocent; and (5) the state habeas proceedings were insufficient. Petitioner also requests an evidentiary hearing.

4

**B. Exhaustion**

Respondent does not assert that petitioner failed to exhaust his claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address petitioner's various claims.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because counsel: a) failed to secure all exculpatory evidence; b)misled petitioner into a faulty plea agreement; c) failed to properly question witnesses; d) failed to retain an expert to rebut the State's expert; e) failed to present vital documentary and testimonial evidence; f) failed to conduct his own investigation; and g) failed to place into the trial record for the purposes of appeal any of the known evidence regarding alleged prosecutorial misconduct.

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

The state habeas court found that petitioner was represented by an attorney "who exercised

all of the skill and expertise which one could reasonably of an attorney" and that petitioner was not denied his right to effective assistance of trial counsel. (S.H.Tr.:342-44). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. (S.H.Tr.:cover). This is not an unreasonable application of the *Strickland* standard.

## A. Exculpatory Evidence

Petitioner asserts initially that his attorney was ineffective for failing to secure exculpatory evidence. In the body of his state application for habeas relief, it appears that he is referring to his step-son's statement that he saw petitioner's brother David Spence on top of the complaining witness one night and to her recantation of her claim that petitioner sexually assaulted her.[1]

It is the prosecution's responsibility, not defense counsel's, to advise the defense of possible exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83 (1963). In any event, the record from the trial reveals that defense counsel was aware of this evidence. The niece testified about the recantation at trial (R. 5:50-51), and defense counsel placed into evidence, for record purposes only, the CPS records for her. Contained in these records are the statements of petitioner's wife, Tena Spence, and her son, Taylor Spence, to CPS about what he saw occur between the niece and David Spence. (R. 8:137; R. 10:Defense Ex. #1 at 104, 147-49). Furthermore, as petitioner acknowledges in his memorandum, his wife gave his attorney a statement that she forwarded to the grand jury who indicted petitioner and a copy of her diary entries for the relevant time period, and both of these documents contain the allegation that Taylor Spence reported seeing petitioner's brother on top of the niece one night that he spent at Patricia Garner's home. (*See* Memorandum at iv; Pet. Ex. A).

---

[1] Petitioner has attached to his federal petition a memorandum in support of the petition. In order to understand the substance of many of petitioner's claims, however, reference to the relevant portions of his attached state habeas petition was necessary.

Moreover, the record of the trial reflects that the CPS documents, Tena Spence's letter to the grand jury, and the recantation letter were all provided to defense counsel prior to trial. (R. 4:3-4). Accordingly, defense counsel was not ineffective for failing to secure the evidence because he aware of and had it in his possession.

### B. Plea Agreement

Petitioner next contends generally that his defense counsel was ineffective for misleading him into a faulty plea agreement. In his state habeas pleading, petitioner asserts more specifically that defense counsel was ineffective for failing to object to the prosecutor's decision not to follow the original plea agreement for a two-year sentence. Petitioner further asserts that this caused him to choose to go to trial because he would not accept the higher offer.

Prior to trial, a hearing was held about a prior plea offered to petitioner. Under this offer, petitioner would plead guilty to aggravated sexual assault in the instant case and a second case and receive a two-year sentence. (R. 3:3). At this hearing, the lead prosecutor in the case stated, however, that she never signed the plea agreement because her supervisor would not approve it. (R. 3:4). At the time of this hearing, the State offered petitioner a plea agreement whereby he would receive a five-year sentence in the instant case and a two-year sentence in another aggravated sexual assault case. Petitioner rejected this offer, believing that he should receive the two-year sentence that was previously offered. (R. 3:3).

Immediately prior to the State's case-in-chief, the State offered petitioner a twenty-five year sentence for both cases. The prosecutor stated that the offer of a five-year sentence in one case and a two-year sentence in the other was no longer available. (R. 5:4-6). Petitioner rejected the offer of a twenty-five year sentence, after stating that he believed that the offer of a five-year and a two-

9

year sentence should still be "on the table." *Id.* Petitioner asserts that his attorney was ineffective for failing to object to the State's decision not to agree to the initial plea offer.

Under federal law, when the prosecution breaches its promise with respect to an executed plea agreement, such a breach implicates the Due Process Clause of the United States Constitution. *Mabry v. Johnson*, 467 U.S. 504, 509 (1984). From the record, however, it is clear that the prosecutor never signed the plea agreement papers. Therefore, there was never any actual executed plea agreement between the parties, and petitioner has not shown a basis for objection, or that his attorney was ineffective in this respect. While petitioner is obviously unhappy that he did not accept any plea offer offered by the State in light of the sentence he received from the jury, he has not shown that his attorney was deficient with regard to plea negotiations, and petitioner definitely and without equivocation, in his own words and on the record, declined to accept subsequent plea offers from the State. Petitioner has not shown ineffective assistance of counsel with regard to this claim.

### C. Questioning of Witnesses

Petitioner next asserts that defense counsel was ineffective for failing to properly question witnesses. In particular, petitioner asserts that defense counsel should have questioned the complaining witness on the issue of whether she had sex with David Spence. He should have also questioned the witness and her mother, Pauline Solis, about whether the prosecution threatened them in order to secure their presence and testimony at trial.

#### 1. Prior sexual conduct

With regard to petitioner's assertion that his attorney was ineffective for failing to question the complainant regarding the allegation that she had sex with another man, petitioner acknowledges that the State was granted a motion in limine on this issue. (R. 3:4-5) He contends

10

that his counsel was ineffective for allowing this motion to be granted and for not questioning the complainant on this issue.

Under 412(b) of the Texas Rules of Evidence, in a prosecution for aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is not admissible, unless it is evidence: 1) that is necessary to rebut or explain scientific or medical evidence offered by the State; 2) of past sexual behavior with the accused and is offered as evidence of consent; 3) that relates to the motive or bias of the alleged victim; 4) of a prior conviction that is admissible as impeachment evidence; or 5) that is constitutionally required to be admitted. Moreover, the probative value of this evidence must outweigh the danger of unfair prejudice. *See* TEX. R. EVID. 412(b)(2) & (3).

In this case, testimony about a sexual relationship between the complainant and petitioner's brother would not have been necessary to rebut scientific or medical evidence, as no such evidence was admitted at trial. It would also not have been admissible as past sexual behavior with petitioner or as evidence of a prior conviction, and petitioner has not alleged, much less shown, that it was constitutionally required to be admitted. The only circumstance under which defense counsel might have tried to have this testimony admitted would have been if it in some manner showed a motive or bias to accuse petitioner of sexual assault. No allegation of bias or motive is contained in petitioner's federal petition or his memorandum in support of the petition. Moreover, the complainant testified at trial that she loved petitioner, that she did not want to be there testifying at trial, and that she told David Spence and his girlfriend Tammy Owen what had happened a couple of months later but did not want them to contact the police because she did not want petitioner to get in trouble. (R. 5:24, 34-5). Evidence of a motive or bias, if presented, it would only

have been admissible if the probative value outweighed its prejudicial effect. Petitioner has not shown that the probative value of questioning a fourteen-year-old girl about whether she had sex with an adult male other than petitioner outweighs its prejudicial effect such that this would have been admissible evidence. Counsel was not ineffective for failing to attempt to admit inadmissible evidence.

Even assuming this evidence was admissible, counsel was not ineffective for failing to question the complainant on this issue. As this Court will address fully later, the circumstances under which Taylor Spence disclosed this information were not wholly favorable to petitioner, as after Taylor told petitioner about what he saw, petitioner told him not to tell anyone, but did not report this information to the police. (R. 10:Def. Ex. #1 at 104, 147-49). Counsel was not ineffective for failing to delve into this issue at trial.

### 2. Prosecutorial Misconduct

Petitioner next alleges that counsel was ineffective for failing to question the complainant and her mother, Pauline Solis, about whether the prosecution threatened them in order to secure their presence and favorable testimony at trial.

As support for this claim, petitioner has attached as an exhibit an affidavit from Pauline Solis. The affidavit states that when she accompanied her daughter to the courthouse to recant her earlier allegation that petitioner had sexually assaulted her, she witnessed an assistant district attorney tell her daughter that she did not believe her recantation. The attorney also said that if the complainant did not testify truthfully at trial, the attorney would make her look like she was the "bad one" on the stand. Solis also states that her daughter began to cry as she left the office and told Solis that she was telling the truth when she recanted her allegation. According to her affidavit, Solis told the

prosecutor that her daughter was telling the truth in her recantation and that they would not be in court.

Solis' affidavit further states that she was approached at her home in December of 2003 by a prosecutor and a police officer and was questioned as to why she did not show up in court. After Solis responded that they had already dropped the charges, she was informed that she would be placed in jail if she did not tell them where her daughter was located. Solis then rode in their car with them to Tammy Owen's workplace, because her daughter was living with Owen at that point. When a detective approached Owen's car, she drove off, and the detective drove after her. Solis further states that Owen was informed that she would be charged with kidnaping and obstruction of justice, and Owen then took them to where the complainant was located. Solis then states that a detective arrived the following morning and took her and her daughter to court and continued to do so for three days until her daughter was removed from her custody and placed in her cousin's care. Finally, the affidavit states that Solis was told that if she cooperated with the State, they would excuse her from being in trouble for her children missing school and failing to report to court, and because she had only recently been released from jail, she felt that she had no other choice but to testify at trial. She also states that neither she nor her daughter were ever pressured by the family about anything either prior to or after the trial, but that neither she nor her daughter wanted petitioner to go to jail. (Pet. Ex. I).

The complainant testified at trial that she was currently living with her cousin, that she sometimes lived with her mother and her boyfriend, and that she was accompanied by her mother and grandmother when she visited with another prosecutor and recanted her allegation against petitioner. (R. 5:15, 41). She further testified that she also wrote a letter recanting the allegation

because her grandmother asked her to do so and she did not want petitioner to go to jail, but that the recantation was not the truth. (R. 5:51). Pauline Solis testified that she found out about her daughter's allegation from her grandmother, Linda Spence, and that by that point her daughter had talked to the police. Solis further testified that she accompanied her daughter and Linda Spence when they went to the District Attorney's office, that Linda Spence wanted to have the charges dropped, that Linda Spence asked the complainant to say that it did not happen and write a letter to that effect, and that Solis allowed this because she was being pressured by the family. Solis also testified that her had never told her that the assault did not happen. (R. 5:83-85). Defense counsel did not cross-examine either of these witnesses.

With respect to petitioner's assertion that defense counsel was ineffective for failing to cross-examine Solis or the complainant regarding alleged prosecutorial misconduct surrounding her recantation, petitioner's support for this claim is Pauline Solis' affidavit. Solis' affidavit differs from her testimony at trial on this issue. In her affidavit, Solis states that her daughter said that the recantation was the truth, but she testified at trial that her daughter never told her that the original allegation was not true. Furthermore, in her affidavit, Solis states that neither she nor her daughter were ever pressured by petitioner's family, but in court she testified that she allowed her daughter to recant her allegation because she was being pressured by his family. The Fifth Circuit has recognized that recanting witnesses should be viewed with suspicion by the courts. *See Wilkerson v. Cain*, 233 F.3d 886, 893 (5th Cir. 2000). Accordingly, given the questionable value of Solis' affidavit, petitioner has not shown that counsel was ineffective for failing to question Solis or the complainant regarding the circumstances surrounding the recantation.

14

With regard to petitioner's contention that counsel was ineffective for failing to question Solis and the complainant about alleged prosecutorial misconduct during the days immediately prior to trial, even from Solis' self-serving affidavit it is clear that Solis and Tammy Owen ignored subpoenas issued requiring the complainant's and their presence at trial, and the prosecutor and police officer came in search of them because of that and threatened possible incarceration because they were in violation of the law. Indeed, petitioner has submitted an affidavit from Tammy Owen stating that she was placed in jail for not going to court in December of 2003, further evidence that she was in violation of a subpoena requiring her attendance at court. (Pet. Ex. E). The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that although not solicited is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Petitioner has not shown that the prosecution presented false evidence at trial, however. Even in her affidavit, Solis states that the prosecutor stated that her daughter would be required to be in court and to tell the truth. While petitioner may complain that the State used harsh tactics in requiring that witnesses obey court subpoenas, he has not shown a reasonable probability that there is a reasonable probability that he would not have been convicted by the jury had defense counsel questioned either complainant or Pauline Solis on this issue. Counsel was not ineffective for failing to question these two witnesses about the prosecution's conduct.

### D. Expert Witness

Petitioner further contends that his trial attorney was ineffective for failing to retain an expert to rebut accusations made by the State's expert. The only expert witness the State called at

trial, however, was a pediatric nurse, Nancy McNeil, who testified generally that DNA exams are not performed on sex assault victims after 48 hours because there would be no available evidence to obtain. She further testified that, although she never examined the complainant, it would not be unusual to find no evidence of penetration on a rape exam, as 90% of rape exams reveal normal findings. (R. 7:13-19). Petitioner does not assert what expert his attorney should have called, nor what portion of McNeil's testimony should have been rebutted. Moreover, defense counsel vigorously cross-examined McNeil regarding her credentials, the reasons why a medical exam was never performed, and personality changes that might be observed in a sexual abuse victim. (R. 6:19-35). Petitioner has not shown that defense counsel was ineffective in his approach to the State's expert witness.

### E. Evidence

Petitioner next contends that his trial attorney was ineffective for failing to present both testimony and documentary evidence that would support petitioner's innocence. In particular, petitioner points to evidence that the complainant had sex with petitioner's brother and that she had previously recanted her claim that petitioner sexually assaulted her and evidence that the prosecution threatened witnesses.

#### 1. Recantation and prior sexual conduct

As noted earlier, the complainant testified at trial about the fact that she had previously recanted her allegation. Accordingly, defense counsel was not ineffective for failing to present evidence about the recantation at trial. With regard to the evidence about her alleged sexual relationship with David Spence, as noted earlier, this type of evidence is generally inadmissible evidence and petitioner has not shown that it would have been admissible in this case. However,

even if the trial judge had found this evidence to be admissible, petitioner has not shown that his

attorney was ineffective for failing to call witnesses to testify on this matter. The only direct witness

to this alleged contact, besides the complainant and David Spence (who was dead at the time of the

trial (R. 6:128-29)), is petitioner's step-son, Taylor Spence. According to the affidavit he signed that

is attached as an exhibit to petitioner's petition, Taylor informed petitioner about the contact

between David Spence and the complainant that he witnessed in the middle of the night one night

at Patricia Garner's house. According to his affidavit, which is similar to the allegation contained

in the CPS documents (R. 10:Def. Ex. #1 at 104, 147-49), petitioner told Taylor not to tell anyone

about what he had seen, and Taylor did not tell anyone until petitioner asked him to tell his mother,

Tena Spence, what he saw *after* David Spence told Tena Spence that the complainant had accused

petitioner of sexual assault. Thus, had Taylor Spence been called as a witness to testify to what he

saw, the State, who was well aware of these allegations as they are also contained in the CPS records

for complainant, would have been free to question Taylor about petitioner's reaction to what Taylor

had seen. The jury would have heard that petitioner told Taylor not to tell anyone about the alleged

felony that he had witnessed and said instead to "let him handle it."[2] While there is nothing in the

---

[2] Tena Spence's affidavit reveals law enforcement's reaction to Taylor Spence's accusation against David Spence. It states that she accompanied her son to report this matter on March 26, 2003, and was informed by Detective Kimberly Mayfield, who also testified at trial, that the detective believed Taylor's story, but would not attempt to indict David Spence until the complainant had gone through therapy. According to Tena Spence, Detective Mayfield explained that it was her belief that both petitioner and his brother sexually assaulted the complainant and that the reason petitioner did not want Taylor to tell anyone what he had seen was that petitioner viewed this as an opportunity for him to also have sex with the complainant. (Pet. Ex. A, affidavit at p. 3). Tena Spence further states in her affidavit that Detective Mayfield castigated her for marrying petitioner and getting involved with his family. Finally, Tena Spence states in her affidavit that David Spence was shot and killed by police officers approximately one month later, on April 23, 2003, when the officers were attempting to serve a parole violation warrant on him and he pulled a knife. (*Id.*, affidavit at pp.3-4). This affidavit therefore reveals that the State was well aware of Taylor's accusation against David Spence but did not view it as exonerating petitioner. The State's position is supported by a letter the complainant wrote, admitted into evidence at trial by the State for record purposes only, stating that petitioner told her that if she did not have sex with him, he would tell people that she had had sex with David Spence and others. (R. 9:State's Record Ex. #5). Moreover, the CPS documents, which defense counsel had in his possession, reflect that an assistant district attorney had spoken to a CPS

state habeas record reflecting the reason this testimony was not elicited by defense counsel or why the CPS records were not admitted before the jury, defense counsel was not ineffective for failing to present this evidence, if admissible, given the potential negative impact it would have had on petitioner's case.

Petitioner also faults counsel for failing to call Stacy Hager King as a witness. In an affidavit submitted to both the state court and this Court, King states that she was subpoenaed by defense counsel, but was never called to testify in petitioner's case. She further states that she would have testified that she is the complainant's cousin and that in August of 2002, the complainant told her about having sex with her cousin Jeff and another person, but did not mention petitioner as being a person she had had sex with. (Pet. Ex. I). While there is nothing in the state habeas record regarding the reason Mr. Boyle did not attempt to call King as a witness, petitioner has not shown that this would have been admissible evidence. First, it is hearsay evidence. As noted earlier, specific instances of prior sexual conduct by a complainant are not admissible at trial except in very narrow circumstances, and testimony that a complaining witness did not include the petitioner in a list of people she had sex with when talking to her cousin does not fit into any of the exceptions. Counsel was not ineffective for failing to present this testimony.

## 2. Threats by the prosecution

Petitioner further alleges that counsel was also ineffective for presenting evidence of threats by the prosecution.

---

worker and stated that complainant had been reluctant to speak in detail about what had happened to her, but the attorney hoped that if she received therapy, it could be determined whether David Spence had also assaulted her. (R. 10:Def. Ex. #1 at 104-05).

This Court has already addressed petitioner's contention that counsel was ineffective for failing to cross-examine the complainant and Pauline Solis on this issue. Petitioner alleges that there was further testimony on this issue that counsel could have presented. He offers an affidavit by Tammy Owen, David Spence's girlfriend, who in fact did testify for the State at trial on rebuttal. In her affidavit, Owen alleges that complainant told her that she had "made everything up" about petitioner in order to get David's attention, and that when the complainant was living with her at the time of trial, the complainant told her that she did not want to go to court because she had lied about petitioner. Furthermore, Owen states in her affidavit that the DA "went beyond the call of duty," ran her off the road, and threatened her with kidnaping charges, so she "gave them" the complainant. Finally, Owen states that she was still put in jail for not going to court. (Pet. Ex. #E).

At trial, Owen testified that complainant told her and David Spence what petitioner had done to her by writing it in a letter because she had a hard time talking about it. She further testified that neither she nor David called the police because they felt that it needed to be handled within the family. She also testified that she was supportive of the complainant after she told them what had happened. (R. 6:124-29). On cross-examination, Owen acknowledged that she had spoken to defense counsel briefly and that he had been attempting to speak to her and the complainant. Defense counsel then asked Owen whether there had been pressure on her and the complainant not to speak to him. Although she answered no to both questions, the prosecutor's relevance objection was sustained, and the prosecutor made a statement to the court that defense counsel was present in court before the judge when she told all of the witnesses that they could talk to defense counsel if they wanted to, but they did not have to do so. (R. 6:130-31). When defense counsel asked Owen whether the complainant was taken away from her, the prosecutor objected on relevance grounds,

19

and there was a conference at the bench. After this conference, defense counsel asked Owen if she had brought the complainant to court when she had custody of her. Owen responded that she did not bring her to court, that she did not have a house of her own but was staying with someone else, that the complainant's mother and her cousin Katricia brought her to court, and that the complainant was now staying with them because it was a more stable environment. (R. 6:132-34).

With regard to petitioner's assertion that defense counsel should have presented evidence that the prosecution made threats to witnesses, the record from trial indicates that Owen was only willing to speak to defense counsel briefly. Therefore, it is unclear whether any information from Tammy Owen could have reasonably been obtained by defense counsel. The record from trial also reflects that defense counsel attempted to question Owen about the circumstances surrounding the complainant being taken from her but was prevented from doing so due to an objection by the prosecution on the basis of relevancy. Defense counsel was therefore not ineffective for failing to attempt to question Owen on this issue. More importantly, Tammy Owen's affidavit states that she was threatened with kidnaping and was later jailed for not attending trial. As noted earlier during the discussion of Pauline Solis' affidavit, the "threat" Owen received appears to have occurred because she did not report to court and bring the complainant to court as required by law. Given that the threat that Owen received was because she disobeyed the law, petitioner has not shown a reasonable probability that, had defense counsel been able to question her on this issue and she testified to this threat, there is a reasonable probability that petitioner would not have been convicted. Petitioner has not demonstrated ineffective assistance of counsel in this regard.

### F. Investigation

Petitioner also contends that counsel did not conduct an adequate investigation in the case.

In particular, petitioner faults counsel for not interviewing known witnesses and collecting evidence to support his evidence. Counsel, however, called both Patricia Garner and Tommy Spence as witnesses. According to the complainant's statement, they were both present in the home when the assault occurred, and both testified for the defense that they did not believe that there was any time that petitioner would have been left alone with the complainant late at night or that anything could have happened in the small house without their awareness. (R. 6:51-63, 81-91). Petitioner has not pointed to any other potential witnesses to the assault that should have been interviewed by defense counsel.

To the extent that petitioner is alleging that counsel was ineffective for failing to further investigate the allegation against David Spence, as addressed earlier, defense counsel was aware of this allegation from both the CPS records and from communication with petitioner's wife. This Court has determined that counsel was not ineffective for failing to attempt to place into evidence inadmissible and/or damaging evidence. Petitioner has not shown how counsel was ineffective for failing to investigate this avenue further. To the extent that petitioner is alleging that counsel was ineffective for failing to present evidence that the complainant's testimony was not truthful, he has not identified the evidence counsel should have obtained. In his state habeas application, petitioner refers to the need for defense counsel to take photographs of Patricia Garner's house, where the assault occurred, and obtain DNA evidence, but petitioner has not shown how photographs of the interior of the house would have assisted his defense. He has not shown that DNA evidence from an assault that occurred over a year before was available, and if so, of what probative value it would have been. Defense counsel questioned Detective Kimberly Mayfield vigorously about the fact that she never went to the alleged crime scene, never took photographs of the crime scene, never spoke

to the complainant's teachers about any possible behavior changes, and never attempted to obtain her clothing from that night to try and obtain DNA evidence from it. (R. 6:5-25). In his closing statement, defense counsel emphasized that the police did not do an independent investigation beyond talking to the complaining witness. (R. 7:47-62). Accordingly, the record reveals that defense counsel highlighted the weaknesses in the State's case through cross-examination and closing argument. Petitioner has not shown that counsel was ineffective in this approach, especially as petitioner has not presented any additional evidence that defense counsel could have discovered through further investigation. Counsel was not ineffective in this regard.

**G.  State Misconduct**

Finally, petitioner alleges that defense counsel was ineffective for failing to place evidence of the State's alleged misconduct into the record so that it could form a basis for a point of error on appeal. However, because the state habeas court and this Court have determined that this claim is without merit, petitioner has not shown a reasonable probability that had this evidence been entered into the record, his conviction would have been reversed on appeal.

For the foregoing reasons, petitioner's claims of ineffective assistance of trial counsel entitle him to no habeas relief.

**IV.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

In his first ground for relief, petitioner also contends that his appellate counsel was ineffective for failing to raise prosecutorial misconduct as a ground of error on appeal. Specifically, petitioner argues that counsel should have raised as an issue that the prosecution "defamed" a defense witness in front of the jury with a false report and charges. (Mem. at iii).

The federal constitution guarantees a criminal defendant the effective assistance of counsel

22

on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether counsel has been ineffective is determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  In the context of appeals, the Constitution does not require an appellate attorney to advance every conceivable argument, and it can be effective assistance of counsel on appeal to focus on a few key issues. *Evitts v. Lucey*, 469 U.S. at 394; *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 920 F.2d 251 (5th Cir. 1990).  Under *Strickland*, Petitioner must show a reasonable probability that, but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Petitioner contends that appellate counsel was ineffective for failing to raise as a point of error on appeal the claim that the prosecution defamed a defense witness.  Petitioner does not identify the witness.  Earlier in the same paragraph, petitioner refers to the complainant and Pauline Solis as defense witnesses. (*See* Mem. at iii.).  To the extent that petitioner is alleging that appellate counsel was ineffective for failing to raise as a point of error on appeal the claim that the prosecution committed misconduct in its treatment of the complainant and Pauline Solis,  the state habeas court and this Court have determined that this claim is without merit.  (S.H.Tr.:cover, 342-44.)  Petitioner has not shown a reasonable probability that his conviction would have been reversed if this issue had been raised on appeal.  The state habeas court's decision is not unreasonable application of the *Strickland* standard, and petitioner is not entitled to relief on the basis of this claim.

## V.  PROSECUTORIAL MISCONDUCT

In his second ground for relief, petitioner asserts that the prosecution committed misconduct because: 1) the lead prosecutor made threats to petitioner's family, including the complaining witness, to force them to attend the trial and to force the complaining witness to testify in a certain

manner; 2) the State knew about evidence that inculpated another person as the guilty party but refused to correct the testimony given; 3) the prosecution withheld exculpatory documentary evidence from the defense; and 4) the lead prosecutor placed the victim's mother in jail and then made a deal with her to testify against petitioner.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir.

1992) (internal quotation marks omitted).

Furthermore, the Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that although not solicited, is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Mooney v. Holohan*, 294 U.S. 103 (1935). This is true whether the nondisclosure was intentional or through negligence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, however, a petitioner must establish not only that the testimony was actually false, but also that it was material and that the prosecution knew it was false. *Napue v. Illinois*, 360 U.S. at 271.

### 1. Threats to Petitioner's Family

With regard to petitioner's assertion that the lead prosecutor made threats to petitioner's family to force their attendance at trial and force the complaining witness to testify in a certain manner, as noted, most of the "threats" made to members of petitioner's family were made after these people did not report to court and did not bring the complaining witness to court as required by law. These threats do not constitute a violation of petitioner's due process. Petitioner also refers to Pauline Solis' allegation in her affidavit about a threat made to her daughter by another prosecutor who did not try the case. According to Solis' affidavit, this prosecutor threatened that if her daughter did not report to court and testify truthfully, she would make her look like the "bad one." Even according to this allegation, this prosecutor did not force the complaining witness to testify in a certain manner. She informed them that the complainant would have to report to court and tell the truth. Therefore, petitioner has not shown that the prosecution either attempted to or

did present false testimony at trial. Even viewing the prosecutor's statement that she would make the complainant look like the "bad one" if she did not testify and testify truthfully as misconduct, petitioner has not shown that this misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Petitioner is not entitled to relief on the basis of this claim.

### 2. Incorrect Testimony

Petitioner next asserts that the prosecution committed misconduct because the State knew of evidence that inculpated another person as the guilty party but refused to correct the testimony given at trial against petitioner. As noted earlier, while the State was aware of a statement made by petitioner's step-son that he saw the complaining witness in a sexual position with petitioner's brother, this was not evidence that exculpated petitioner. It suggested, instead, that the complaining witness had been sexually assaulted by another family member *in addition* to petitioner. As such, it was not misconduct on the prosecution's part to decline to "correct" the testimony given against petitioner. Petitioner is not entitled to relief on the basis of this claim.

### 3. Exculpatory Documentary Evidence

Petitioner also contends that the prosecution committed misconduct by withholding documentary evidence that exculpated petitioner. Petitioner appears to be referring to records that contained the allegation made by his step-son against his brother and records that contained the complainant's recantation. As noted earlier, she testified at trial about the recantation, and from the record it is clear that defense counsel was provided the written recantation and the CPS records that contained the step-son's allegation. The prosecution did not withhold this evidence, and petitioner is not entitled to relief on this basis.

26

### 4. Complaining Witness' Mother

Finally, petitioner asserts that the prosecution committed misconduct by placing the victim's mother in jail and then making a deal with her to testify against petitioner. As support for this claim, petitioner points to Pauline Solis' affidavit. It asserts that Solis was told that if she cooperated with the State, they would excuse her from being in trouble for her children missing school and failing to report to court, and because she had only recently been released from jail, she felt that she had no other choice but to testify at trial. (Pet. Ex. I). As noted earlier, Solis' affidavit differed from her testimony at trial. Recanting affidavits should be viewed by suspicion by the courts. *Wilkerson v. Cain*, 233 F.3d at 893. Nevertheless, even if Solis' statements regarding the prosecution's actions are true, they do not amount to misconduct on the prosecution's part such that petitioner's due process rights were violated. Nowhere in Solis' affidavit does she state that she was told to lie under oath or testify incorrectly. Instead, she was promised that she would not return to jail for failing to report to court if she testified for the State. As her own affidavit reveals that her actions in failing to report to court with her daughter as required are what caused the State to threaten her with kidnaping charges, the State's response cannot be considered misconduct that so infected the trial as to render it unfair and a violation of petitioner's due process rights.

The state court denied these claims on their merits. (S.H.Tr.:342-44, cover). This decision is not contrary to federal law. Petitioner is not entitled to relief based on his claims of prosecutorial misconduct.

## VI. ACTUAL INNOCENCE

In his fourth claim, petitioner argues that he is actually innocent of aggravated sexual assault. Specifically, petitioner asserts that exculpatory evidence exists that was not presented at trial and

that the prosecution was permitted to present inaccurate testimony. Accordingly, petitioner contends that there is proof that he did not commit the crime with which he was charged.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding. The Court assumed, for the sake of argument, that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim. The Court stated that the threshold showing for such an "assumed right" would be "extraordinarily high." *Id.* at 417. The Court then concluded that conflicting affidavits submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18.

Since *Herrera*, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Accordingly, under both Supreme Court and Fifth Circuit case law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, Texas does have an avenue in which to pursue actual innocence claims. In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief, providing that a petitioner established, as a threshold, that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Indeed, the state habeas court denied petitioner's actual innocence claim on its merits (S.H.Tr.:342-44, cover).

Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to such relief. The evidence that petitioner relies upon to support his actual innocence claim is the complaining witness' recantation and his ten-year-old step-son allegation that he saw the complaining witness having sex with another uncle in June of 2002 (Pet. Ex. D). The complaining witness' recantation is not new evidence. It was presented at trial (R. 5:43, 50-51), and the jury weighed the testimony given and clearly determined that her testimony was credible. Evidence that the complaining witness had sex with another uncle, even if true, is not evidence that petitioner is innocent of the charge. Petitioner is not entitled to relief on the basis of this claim.

## VII. STATE HABEAS PROCEEDINGS

In this ground for relief, petitioner asserts that he is entitled to federal habeas relief because the state habeas court did not conduct a live evidentiary hearing and did not consider all of the evidence that he submitted. The United States Supreme Court has held that state collateral proceedings are not constitutionally required, and states have no federal constitutional obligation to provide collateral relief to state criminal defendants. *Murray v. Giarrantano*, 492 U.S. 1, 10 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Therefore, because the Constitution does not require that a state provide a criminal defendant with *any* state post-conviction collateral

proceeding, a claim that the procedure that is provided is constitutionally inadequate cannot serve as the basis for federal habeas relief.

Moreover, the Fifth Circuit has held that a petitioner is not entitled to federal habeas relief on a claim that the state writ process was inadequate because this is an attack on a proceeding collateral to his detention, not the detention itself. *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.), *cert. denied*, 120 S.Ct. 22 (1999); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). The Fifth Circuit has consistently held that a federal habeas petitioner is not entitled to relief based upon various claims that the state habeas process was constitutionally inadequate. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (holding that claim that state habeas process constitutionally inadequate because Rudd was not allowed access to the state's case file is not a basis for federal habeas relief), *Trevino*, 168 F.3d at 180 (holding that Trevino not entitled to federal habeas relief where the state habeas court adopted the district attorney's proposed findings three hours after they were filed); *McGowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (noting that the fact that a petitioner was not provided a transcript of state court proceedings is an infirmity in state habeas proceedings that does not constitute a ground for federal habeas relief); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) (holding that the quashing of Duff-Smith's subpoenas by the state habeas court is not a basis for federal habeas relief); *McCoy v. Lynaugh*, 874 F.2d 954, 966 (5th Cir. 1989) (ruling that the failure of a state habeas court to consider affidavits is not a ground for federal habeas relief because there is no constitutional right to attack a state conviction collaterally); *Miller v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987) (ruling that there is no federal habeas relief available based on a claim that petitioner was denied an evidentiary hearing in state court). In these cases, the Fifth Circuit has stated that a claim of an infirmity in the state habeas proceeding does not constitute a

ground for relief in federal court. Accordingly, petitioner is entitled to no relief based on this claim.

## VIII. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims in his state writ. The Court of Criminal Appeals denied the state writ, and thus petitioner's claims were adjudicated on the merits. This decision at the state level is consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## IX. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## X. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SO RECOMMENDED on this 23rd day of January, 2009.**


_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE